We do have a sign language interpreter who is participating this morning and with that we'll hear from the appellants. You may proceed. Good morning, may it please the court. My name is Kenard Hunt and I represent the appellants Roger, Linda, and Priscilla Durand. Reviewing the record evidence through the summary judgment lens which requires the court view the facts and any inference of the facts in a light most favorable to the appellants, respondent Fairview Health Services was not entitled to summary judgment dismissal of appellant's lawsuit and appellants are requesting that the lawsuit be reinstated. Turning first to Roger and Linda's Roger are disabled, they are deaf and Fairview is a place of public accommodation for ADA purposes and receive federal funding for rehabilitation purposes. It is the third element of the discrimination claim whether Fairview discriminated against them based on disability which is at issue and is and is the grounds on which the trial court committed error in granting summary judgment dismissal. Now Roger and Linda are what Fairview refers to as stakeholders in a Fairview patient. That patient being Roger and Linda's son Sean who was initially in Fairview ICU on May 8, 2013 and died the next day on another floor. One of the discrete events to which Fairview denied the appellants meaningful services were the care conferences. One of the services that Fairview provides to all stakeholders are care conference. A care conference was convened for Sean Duran's stakeholders who included Sean's family and close friends on both May 8th and 9th by Fairview advanced practice nurse Klopp, a specialist in palliative care and Dr. Malik. Nurse Klopp knew that through Sean's health care agent Priscilla that Sean's parents were deaf and an interpreter was requested and needed. Contrary to Fairview's assertions in its no interpreter was provided for either care conference until after Dr. Malik had left and their care conference with all stakeholders had been completed. So unlike the meetings at issue in Loy, the purpose of a care conference is not simply to convey information although that's part of it. These conferences are not mechanistic exercises in providing information. They're emotionally charged. They're highly personal group interactions and discussion among all the stakeholders. Recently the Hamlin Law Review volume 36 at page 229 discusses the hospital's service of the care conference for stakeholders which echoes the description of that by Fairview nurse Klopp. Care conferences give stakeholders a chance to voice their respective wishes, hear from the other stakeholders and allows expressions of frustration. One of the main purposes of these care conferences that so no stakeholder feels left out or ignored by the decision-making process even though the ultimate decision is by the health care agent. And part of the care conference role is to have the stakeholders together rework their sense of hope often shifting from hope to a cure from hope for comfort and peace and it has a spiritual component. The desire or goal for the stakeholders is to come to some kind of group decision or agreement on what the patient would want. By failing to provide an interpreter to Linda in these care conferences, they were deprived of the care conference service which Fairview provided to all other stakeholders. In Argonne... Can I interrupt you there? You know we're in a different era with HIPAA regulations and such as that and so you talk about the status of the stakeholder and with respect to Mr. and Mrs. Duran, what's the basis of their stake so to speak in these discussions in view of the fact that the patient was an adult and the health care directive designated someone other than the parents as the as a decision maker? And I'm wondering what if any role do they have as and rights do they have as a stakeholder in this process? Well what Fairview recognizes is that the stakeholders have a role in that they are close to the patient. They're stakeholders in the patient life. They're truly they're not the health care agent. Matter of fact, Nurse Klopp met first with a health care agent who is Priscilla and together the decision is made to have this care conference which is the benefit for all the stakeholders. Now the federal regulations HIPAA is not of concern here because the health care agent authorized the hospital, the care providers to give the information to the during doctor's rounds where other stakeholders were present. So what we have that doesn't aren't they entitled to and I don't want to diminish this interest but aren't they only entitled to meaningful access and an equal opportunity to these benefits so to speak that a that another any other person in their position would have and and it seems to me that they're really in this particular situation they're really akin to a visitor and what and what what right to information and what availability of information and access would any other visitor who's permitted by family to be present be entitled to? No, I disagree with that because what you have here is you have like I said they're called stakeholders but we had involved in these care conferences all of the family members there are a number of siblings of Sean there were close friends and the idea of the care conference is to provide information but also to have these group discussions and to weigh in so even though they're not the health care agent they have these right to a service which Fairview provides this service to the to the non-disabled they get to able to discuss here you have a situation because of the lack of an interpreter Roger and Linda are deprived of that service it would be like having a care conference in a room that's not accessible to a wheelchair where the mother and father are wheelchair bound and so you have the care conference over here while they sit out in the hall and you come out later and you just tell them well this is what we talked about this is what we decided I mean that is not meaningful access to the same service then the disabled persons are treated differently than the disabled and it's not effective communication so I think it's very important to look at the discrete events and that one of the discrete events are these care conferences for which there was no interpreter present and where it was after the fact an interpreter would show up and nurse Klopp would go through but by then all the stakeholders had dispersed and Roger and Linda were not allowed to weigh in in that group discussion setting another series of events is with regard to the doctor's rounds there was a request to have interpreters available when the doctors come around now what's interesting is about Fairview's own policies I'd like to refer the court to our addendum at 8212 of our appendix which is where Fairview in its materials says that an interpreter is to be provided by hospital staff if they recognized or had reason to believe a relative of a patient is deaf or hard of hearing and quote you must advise the person that auxiliary aids and services will be provided free of charge Fairview also had a policy to schedule interpreters in advance of scheduled rounds but no interpreter was provided to the Duran's and nurse Klopp admitted that Priscilla who was the health care agent didn't limit interpreter requests to care conference again summary judgment is inappropriate on these facts also places of public accommodation that provide phones for outgoing calls are to make accessible TTYs or other telecommunication products for use by the hearing impaired using this court's analysis in Argony the trial court should have evaluated whether Fairview provided Linda Duran the same opportunity to access its telephone service that it provided to others the facts of record permitted jury to find that it did not so when you look at the events in question you look at the care conferences you look at the nurses rounds and you look at the fact that there was not an available working accessible TTY on this record the trial court committed error in granting summary judgment to Linda and Roger Duran finally Priscilla Duran has standing to bring her own ADA Rehabilitation Act claim now there's a split in the circuits between the 2nd and 11th but what's interesting is even the widely accepted that under the ADA non-disabled persons can be personally discriminated against if denied some benefit because of association with disabled persons McCollum found no violation of the ADA because 28 CFR 936.303 sub c sub 3 was not yet enacted that's the um CFR with regard that you cannot ask an adult to interpret for a disabled person that the the hospital has to provide the interpreters now it's true McCollum found the RA less clear but ultimately concluded the threshold for associated standing was the same under both now in Loeffler the 2nd circuit had concluded the standing provision of the RA is distinct from the provision for discriminatory contact conduct the FO4's enforcement provision extends relief to any person who is aggrieved by a violation of 504's non-discrimination provision and the 2nd circuit concluded a non-disabled person is aggrieved when a hospital relies on them to interpret for a deaf person here Priscilla requested interpreter for her parents and then when they were not provided she did her best to interpret for them because of that Priscilla was treated differently than it would treat a daughter of a hearing parent with the same obligation as a health care agent the denial of an interpreter for the parents is also a denial of benefits to Priscilla she is a person aggrieved and is entitled to pursue her claim so what we're asking this court to do is viewing these facts of record and there are disputed facts but viewing them in a light most favorable to the Duran's which this court must do and viewing those inferences in a light most favorable to the Duran's which again the court must do applying the applicable law there is a fact issue here with regard to discrimination and the Duran's are entitled to reversal and to proceed on the merits thank you thank you counsel you may proceed good morning your honor may it please the court my name is Matt Franson I represent the appellee for every health services in this case before I get into my what I thought were my prepared remarks I did want to respond to a question the court had asked about HIPAA and whether or not Roger and Linda Duran were in fact visitors the word stakeholders been used throughout the Duran's briefs and they were stakeholders and because of that they had some heightened right to information to a patient who was their son but who was an adult son who had excluded them from his health care directive I would note that the phrase stakeholder does not equal decision maker the decision maker in this case when Sean Duran was unable to provide or to communicate with his health care providers was his sister Priscilla Duran and on May 8th 2013 Priscilla Duran and this nurse Amy Klopp did indeed meet in what's called a care conference and during that care conference between Priscilla Duran and Amy Klopp Priscilla Duran made two decisions one was to place her brother Sean on comfort care which means because he was dying there's gonna be no measures used to save his life they're gonna keep him comfortable that was one decision the second decision was to remove his defibrillator the reason they move remove a defibrillator is because they don't want to shock him as he's dying they only do that for dying patients certainly Priscilla knew on May 8th during that meeting with Amy Klopp that her brother was dying but Priscilla didn't only know that her parents did as well Roger and Linda both briefs talk about what happened before May of 2013 at Ridges Hospital going back to November December of 2012 Roger and Linda Duran were involved in a conference with a hospice provider through Fairview Health Services and there was an interpreter present for that meeting hospice is only provided to people who are dying on April 11th of 2013 Roger and Linda Duran were present again at the hospital with the same nurse Amy Klopp about three weeks before the events had issued in this case again there was another conference with an interpreter discussing the dire prognosis of their son Sean so when Roger and Linda came to the hospital on May 8th 2013 they knew their son was in very dire straits and in fact Priscilla and one of her sisters contacted Roger and Linda Duran on the morning of the 8th and told them this could be it so they got to the hospital on May 8th at approximately 1 30 in the afternoon we know from the records that just after an hour somewhere around 2 40 or so Fairview contacted a an interpreter provider that interpreter I think was dispatched somewhere around 2 45 got there at 3 44 in the afternoon and was there until six o'clock we know that because we provided the court with their invoice they were there for two hours and 16 minutes while it is true that Priscilla and Priscilla Duran and Amy Klopp first had a care conference they also had a second one nurse Klopp testified she knew that Roger and Linda Duran were deaf and that they would indeed need an interpreter there was a second care conference with an interpreter now there's been some some argument and some things in the briefs the care conference took place before before the interpreter ever arrived Amy Klopp testified that as they're gathering people together there may certainly have been some discussion she may have there she may have fielded questions from folks and done that before an interpreter came but she talked about what her practice was what she would have told Roger Linda Duran with the benefit of an interpreter there is no disputed fact that there's an interpreter available and now whether or not they ask questions whether or not they took advantage of that opportunity that was on them I think there was a comment during that during one of the depositions I believe was Linda Duran who said well I didn't have any information so I didn't ask any questions well I think you should we can flip that on the head and say well if you would have asked you would have had more information Fairview provided during that May 8th conference with a interpreter Fairview provided Roger and Linda Duran with effective communication that provided meaningful access to Fairview services and I should note there is no claim anywhere that the interpreter on May 8th was in any way ineffective was unqualified didn't know what they were doing that interpreter on May 8th was also present during a meeting with one of Sean Duran's doctors as Dr. Malik. Ms. Duran testified that there was an interpreter there there's the claim that this interpreter arrived late again under Loy Roger Linda Duran had an Go forward to May 9th again there's another CARE conference with Amy Klopp again it's documented it's undisputed there was an interpreter available for Roger and Linda Duran on May 9th taking this court's decision in Loy I think it's completely analogous to the extent that there may have been other discussions conferences that did not involve Roger and Linda Duran it's undisputed they were asked questions to obtain information I think there was a point made in one of the briefs that this second conference on May 9th was only about 15 minutes long well it was only 15 minutes long because it didn't sound like there are a lot of questions Roger Duran testified he never once asked the question during any of these conferences why because he didn't feel comfortable doing that with his son in any event Fairview provided effective communication that provided meaningful access to those interpreters under Loy I believe that's dispositive the district court relying on Loy relying on the fact that you can have interpreters talk have communication in subsequent meetings is all that is required under the ADA and the Rehabilitation Act um there is a claim that Roger and Linda Duran and their daughter Priscilla wanted access to interpreters every time a medical provider came into that hospital room every time a nurse came in every time a doctor came in and although they won't admit it that constitutes 24-7 round-the-clock interpreting services that's the Martin case that's been cited in the briefs there is no requirement under the ADA or the RA for continuous 24-7 interpreter care they claim they had a standing request for interpreters but again that standing request amounts to 24-7 round-the-clock care around-the-clock interpreter services which is not required under the law Roger and Linda Duran claim that because some discussions may have happened outside the hearing of interpreters or happen before interpreters arrived that they didn't necessarily understand their son's condition didn't understand his prognosis didn't understand what was going to happen well the law doesn't require or guarantee doesn't require Fairview to guarantee comprehension under these circumstances we've cited the cases that talk about that as well instead what the law requires is uh give them an opportunity to have equal access or give them an opportunity to gain the same benefit as non-disabled or hearing people and they certainly had that benefit with the use of interpreters I want to move forward to Priscilla Duran's claim what before you do that what about the TTY issue sure it's undisputed that Linda Duran asked for a TTY on two occasions on May 9th this is after her and her husband formulated a plan to leave the hospital Roger said he had to go to work she would come back to the hospital sometime later that evening I think she arrived about eight o'clock at that point in time she realizes I need my son is dying I need to contact my husband I should note that before that time there was never a request made for a TTY ever by anybody Linda Duran or Roger I forget who said well we didn't need one we never had a reason to call anybody as judge as the district court noted they didn't request a TTY until they needed it right that minute sometime late in the evening on May 9th it is true Linda Duran approached this nurse Hewitt asked for a TTY nurse Hewitt mistakenly thinking that those are only available for patients said I can't provide that to you that's against Fairview's policy that's wrong but Ms. Duran came back give or take an hour later and this time Ms. Hewitt agreed to provide the TTY there's some time to go get it and now there's a question about whether or actually provided all the equipment all the hookups the connections for this TTY the deposition was taken of the Ridges Hospital interpreter person and she testified about a box of equipment that's provided there's pictures of it in our addendum I think it's at one pages 121 to 127 we provided color photographs there's a telephone in there a push button phone the TTY and on there it says dial 9 to get an outside number and in fact I think that's the Minnesota relay number on it it says 9 in parentheses to dial that number never until summary judgment did anybody ever claim that there wasn't a telephone I think they call it a rotary phone provided that's the first time anyone ever said there was no telephone not during the depositions not anytime what we have is a box with a telephone in it they say it's the wrong kind of telephone well that doesn't make sense to me because the testimony was is they in fact got it connected but they kept getting a busy signal how do they get a busy signal if they don't have a phone they had a phone Roger Duran testifies his understanding they didn't dial nine now nurse Hewitt perhaps could have helped with that but she was kicked out of the room I think the district court was right and and and ruled correctly in this case not every denial of an auxiliary service amounts to discrimination that be that first denial by that nurse that doesn't necessarily make a discrimination they got the phone within an hour I think what's important to have any type of liability or a finding of discrimination in this issue so you to show causation we cited that that line from the McCollum case you need to show some cause between alleged violation and some harm the fact is there's a lot going on with this efforts trying to contact Roger Duran that had very little to do with not being able to find a TTY Ms. Duran Linda Duran asked two of her daughters to leave a message at this voicemail both of them called got the voicemail and it sounds like they both hang up they didn't leave the message you go ahead and address the circuit split on standing for non-disabled persons I will your honor so we've got the McCollum case we have the Loffler case McCollum is the case that I think the district court rightly found was applicable and is the right standard Loffler has a what I would say is a much more broader standard if I'm going to get to my notes your honor McCollum found well McCollum rejected this broad interpretation of associational standing and instead focused on the 80 it really what this is interplayed with is between the ADA and the Rehabilitation Act the ADA has always said that you need to be personally excluded personally denied benefits or personally discriminated against McCollum I think rightly found that is the standard that both the ADA and the RA which are applied similarly identically should have the same standard the dissent in Loffler I think made a good point that if we go with the more broader approach from the Loffler majority opinion this is going to open the flood gates to all types of of potential associational standing type claims I think there is a something about you know if you want a gluten-free meal and the the the hospital burns the meal does that put them on potential liability I think that's a little outlandish but I think a more the more narrow construction found by the district court in this case found by McCollum in that case is the right one because it makes the RA the Rehabilitation Act and the ADA the same you need to be personally excluded personally denied benefits or personally discriminated against I think the McCollum had a good point they said if the court held that associational standing the Rehabilitation Act quote covered injuries beyond the exclusion denial of benefits or discrimination that a plaintiff personally suffers the Rehabilitation Act would impose a higher standard than the ADA associational standing provision does that doesn't make any sense under the way that these laws are applied the regime between the ADA the Rehabilitation Act so for that for that my point I guess there would be the district court correctly found McCollum is the standard in this case and should be applied here otherwise we've got it doesn't make sense I have 15 seconds left and unless the court has questions for me I'll be seated thank you thank you all right how much time does counsel have all right we'll we'll hear your rebuttal listening to respondents argument illustrates the point to the material issues of fact and dispute if you look at the record in this case Roger and Linda were present with an interpreter on care conference before Sean's hospitalization there had amends been made between Linda and Roger with Sean and that is of record in this case and nurse Klopp testified that the health care agent can orally change who has access to information and Priscilla at all times was involved in the care conferences it gets down to what is the service that Fairview is providing if the idea is it's just to relay information then it is like Loy but care conferences are not just to relay information therefore discussions there are for the ability to get comfort from each other the stakeholders talking about what is the plan what is necessary what would Sean want and so in that respect it is vastly different than Loy and that goes back to this court's decision in Argany where you look at what is the service provided and was the disabled person given the same service and on this record the answer to that is no with regard to Priscilla's claim I refer the court to the McCollum at 760 Fed third at footnote five where it talks about the fact that at the time McCollum was decided the regulation was not in place that provided that you could not rely on an adult parent and I also would just like to briefly note that Loeffler was decided in 2009 and we have not seen the floodgate type of cases that was the assertion made by the respondent this morning so I ask for reversal and reinstatement thank you very well thank you counsel appreciate your arguments today the case is submitted and you may stand aside